Next case, Knox v. Roper Good morning. And I take it you've chosen, Counsel, to break up your argument between yourself and Amicus Curiae for the EEOC? Yes, Your Honor. You may proceed. Thanks. Thank you. May it please the Court, my name is Chris Brown and I represent the Plaintiff Appellant Brad Knox in this matter. Given the Court's instructions, I will refrain from going through the detailed timeline of events at the beginning of this matter. The very brief description of how he violated that policy in the defendant's brief, I think, is inconsistent with the evidence. But in any event, it is irrelevant to defendant's brief on summary judgment. In any event, Mr. Knox was accused of violating the policy and he was told he had three options, initially told he had three options. After about a week and a half, the return to work option added a release that had not previously been mentioned. So there has been much debate in the briefing in the case on whether there is direct evidence or not direct evidence, whether the but-for causation standard requires or what it requires, how it's applied, is it applied at the prima facie case or is it applied on the pretext or after the rebuttal burden is met. But plaintiff submits that none of these issues changes how this case should have been decided because plaintiff should have prevailed under any of those scenarios. From the outset, this can be viewed one of two ways. Either the refusal to sign a release to remain employed. Why don't you take your arguments separately, starting with retaliation and then going to the race discrimination claim? Yes, Your Honor. I only say that just speaking for myself because I think your argument is more compelling on the first than the second. And I'm focusing on retaliation now. So the issue is protected activity. Is refusal, the first issue, is refusal to sign a release itself a protected activity? And the plaintiff claims that it is a protected activity. And that Goldsmith and Gate Gourmet and Wright v. Southland support that proposition. Let me ask you this question. Assuming he had signed the release, would it have been valid? Well, Your Honor, I'm thinking because that hasn't come up in the case, would it have been valid? In other words, can you compel somebody to release their federal rights as a condition to employment? I don't believe you can legally do so. Well, legally is what we're here to determine. Right. So I know that the employer would have argued it was valid. And I know that it would have dissuaded someone from pursuing their claims. So in that, you know, to that extent, it would be retaliatory and have dissuaded him from pursuing a charge. I don't know if it would have been invalid or valid. I'll think about that when I sit down. But in Goldsmith, and the district court or the magistrate judge found that Goldsmith stood for the proposition that it was evidence of causation, not a protected activity to refuse to sign a release. But we think it can be both. And in Goldsmith, it says that Bagby Elevator stated that its reason for Goldsmith's discharge was his refusal to sign the agreement. But that reason is retaliatory. In Gate Gourmet, it reads, the statutorily protected filing of and refusal to settle the EEOC charge caused Gate Gourmet to deny Williams a light duty position, which is a materially adverse action. And in Wright v. Southland, the court said Wright was fired in retaliation for filing a complaint with the EEOC. We hold that Wright has presented direct evidence of retaliation. If the refusal to sign the release is itself protected activity, then we submit that summary judgment in this case was appropriate for the plaintiff. Because Mr. Knox was going to remain employed as long as he went to EAP counseling, except he didn't sign a release. And the evidence from Ms. Neelis that's in the brief, the information she gave to Janet Hill says as much. And Ms. Simanson's testimony that as long as he signed the last chance agreement, he would have remained employed is also on point. Finally, even if it's not a protected activity, as the magistrate judge found, it's undisputed that he engaged in protected activities by making complaints. And if the refusal to sign the release is evidence of causation, there is substantial other evidence in the record, the timeline of events, the evidence I just mentioned to support causation and denying summary judgment. Thank you much. Thank you. And good morning, Ms. King. Good morning, Your Honor. Ann King on behalf of AMECA's U.S. Equal Employment Opportunity Commission. I'll talk about the other type of protected activity that was just mentioned, and that was the focus of the commission's brief. And those are Knox's complaints of race discrimination. He made several... A complaint of racial discrimination was a protected activity. That's right. I don't think that is disputed here. And I don't know that there was any dispute that termination constitutes an adverse employment action. Correct, Your Honor. Seems that the only real issue here is the third question, whether or not Knox had offered enough evidence from which a reasonable jury could find, could conclude that his protected activity was causally linked to the termination. Isn't that what we're at about today? Yes. That's my understanding when focused on the complaints as protected activity, that causation is the disputed question. And here, as counsel emphasized, there's ample evidence that would support a jury's conclusion that Knox's complaints were a but-for cause of his termination, because Roper responded to his discrimination complaints by first conditioning his continued employment on a release, and then firing Knox for rejecting that release. Again, the timeline is important. One thing that's essential here is that Roper offered Knox three options, including the option three, anger management counseling plus continued employment, but did not initially require a release for continued employment. One way to look at the evidence is that when Knox accepted option three, he also renewed his complaint of discrimination, and only after that did Roper impose the release. Then after Knox declined to sign, Roper fired Knox. Although there are a couple steps in that sequence, that temporal sequence offers a path for a jury to determine that his complaints were ultimately a but-for cause of his termination. This Court's precedents squarely support that conclusion, particularly, as counsel noted, Goldsmith, Wright, and Gate-Gourmet, because those cases establish a legal principle that an employer may not withhold a benefit that the employee would have otherwise received because of the employee's protected activity. Here, that benefit is the continued employment that Roper offered Knox that was initially not contingent on a release. Does Nassar, Abrogate, or Alter, Wright, Goldsmith, and Gate-Gourmet? No, Your Honor. It appears that the District Court reached that conclusion partly based on the assumption that but-for causation under Nassar requires that protected activity be the sole cause of the materially adverse action, and that's not correct, Your Honor. There can be more than one but-for cause. And your view is that that has been a long-established principle? That but-for causation is... It need not be... Need not be sole causation. The only cause. Correct, Your Honor. This Court recognized as much in Farley, which notes that but-for causation is a cause that makes a difference in the outcome. In that case, long predates Nassar. The Supreme Court in the Burge decision also clarified that but-for causation is a cause that can combine with other factors to produce the result, and the inquiry is simply that the harm would not have occurred in the absence of the protected activity. Here, a jury could determine... So the question is whether or not Roper would have fired him had he not engaged in the protected activity. Yes, Your Honor. And a jury could find that his complaints were determinative of Roper's decision to impose the release, and that his decision not to sign the release was determinative of his termination. And so that provides a but-for causation. Just wanted to also add that the Commission's brief argued that Nassar applies as part of the case, and considered that it was relevant at the prima facie stage. I don't think that matters in this case, ultimately, because Roper has already proffered a legitimate reason for termination. But I did just want to highlight that the Commission took that position in our brief. Thank you, Your Honor. Thanks very much. And I will say that the appellants have reserved three minutes for rebuttal. With that, Counsel, Mr. Cameron, come and speak with us. Thank you, Your Honor. May it please the Court, District Judge Rinda Evans got it right. On the retaliation claim, which seems to be the focus of the argument, she applied the correct but-for cause after Nassar. Well, let me ask you this, Counsel. If, as a condition of employment, everybody was asked to please sign this employment contract and agree in advance to give up any right to seek relief from a discriminatory practice that they may have discovered after they came on the job, would that be valid? I think without, and you'd asked a good question, that if he had signed the release, would it have been valid? And the answer to that question is, yes, it would have been a valid release. No, my question is, would it be okay to have an employee sign a employment contract wherein in advance he waived all of his federal rights? I think the answer to that question is no, but that's not what Mr. Knox was asked to do here. In fact, he was asked to sign a release as a condition of a last-chance agreement that expressly preserved his right to file a charge of discrimination with the EEOC. All three options that Mr. Knox He was going to preserve that with that agreement he refused to sign? It was expressly spelled out that he could do so, just as the ADEA, Older Workers Benefit Protection Act amendments provide. With respect to the but-for causation standard, though... I take it you agree that there's no dispute that the complaint of racial discrimination was a protected activity? We don't dispute that. And I take it you do not dispute that his termination would constitute an adverse employment action? That's correct, but we do dispute that the offering of a release constitutes an adverse employment action. Okay, so let's go right to the heart of that matter. Okay. So, with respect to but-for causation, Judge Evans applied the correct test. At two places even in the Nassar decision, the court says that it must be the but-for cause, but the question is, the question is would she apply correctly? I'm going to quote her language here. Is it your view that that means the only cause? It doesn't mean the only cause. So you accept that if there are two causes, the essential question boils down to whether the defendant would have fired the plaintiff had he not engaged in the protected activity? Yes. The question is not, it's not, it doesn't have to be the sole cause, and Judge Evans did not find it to be, she did not hold that it had to be the sole cause. Was there not sufficient evidence to take that question to the jury? There's not. That demonstrated that Roper would not have included the release but-for the complaint that Knox made? Respectfully, there was not in this case, and the cases that the EEOC and Knox's counsel completely ignore are four panel decisions, three of which post-date Nassar, that deal with the square question before this court, which is when discipline termination is already under contemplation before the complaint, and then the employer follows through with a termination after the complaint, they can't meet the, they cannot meet the causal connection. That's the Tucker versus Florida Department of Transportation case, where a panel of this court held that temporal proximity between the protected activity and the adverse action alone generally cannot show causation when the employer contemplated the adverse action before the protected activity takes place. Court further holds, and this is also within the language in Nassar, that Title VII's anti-retaliation provision does not allow employees who are already on thin ice to insulate themselves against termination or discipline by preemptively meeting the complaint. Thank you. What are we to make of the testimony of Janet Hill? Hill testifies, if I have it right, that Nelis, Roper's in-house counsel, told her, quote, pretty much verbatim, end quote, that the release became an issue, quote, because Knox complained. That's pretty direct, isn't it? Couple things on this, Your Honor. First of all, Melanie Nelis is not the decision maker. She's counsel to the party. The decision maker is Joe Renzetti. Joe Renzetti, on the 28th, two days before the complaint, said, the minute I heard that Brad beat a co-worker, termination was on the table. Then the suspension... Are you saying the testimony from Hill is not relevant, or are you simply saying it's not dispositive? I'm saying a couple things. First of all... No, I want you to answer the question I'm asking. Is Hill's testimony relevant to this question? Your Honor, I don't even believe it's evidence. Arguments between the parties of their parties' respective positions should not even be considered by this court under Rule 408. Well, it's more than an argument. Hill said, I spoke with their lawyer, and their lawyer told me, quote, pretty much verbatim, the release became an issue because Knox complained. That's an assertion of fact. Maybe it's right. Maybe it's wrong. Maybe it's admissible. Maybe it's not. Maybe it's relevant. Maybe it's not. But it's most assuredly a recitation of what she claims she was told by the in-house counsel. I'm just trying to find out, is it relevant? Sure. I don't believe it is, because even if that statement may be considered, it can't be imputed to Joe Renzetti, and the undisputed evidence is that Joe Renzetti is the decision maker for all of the material actions in this case. Melanie Nelis' comment to Janet Hill, if made, and she disputes she even said it, cannot be imputed, and there's no evidence that it can be imputed, to Joe Renzetti, the decision maker. The decisions in this case were made long before that conversation between Ms. Nelis and Ms. Hill, where they argued each other's respective positions. What are we to make of the assertion that the release was not discussed in reference to the anger management classes, that option in Renzetti and Simansen's initial discussion with Knox? Knox says it wasn't mentioned, and neither Simansen nor Renzetti recall that it was discussed. Is that of moment or relevant to what was going on here? So what Mr. Renzetti testified to is that he told Mr. Knox that his options would be forthcoming and communicated in writing, and then the next day on a phone call, Ms. Simansen had with Mr. Knox, she said the same thing. Mr. Renzetti testified unequivocally that he always includes releases in sensitive personnel matters, so it was something that was in his thought process two days before Mr. Knox had even complained, and he told Mr. Knox he articulated in general format there would be three options, and it's also worth pointing out that all three options had termination as a component. He could either be terminated. Let me ask you about that. The district court said, is there no evidence, is there any evidence that similar releases were included as a matter of course in other LCAs that Roper offered to other employees? So he was asked about his time at Roper Pump Company, and he'd only been at Roper Pump Company I believe for a year and a half or two years as of that point in time, and he could not recall one. So it's fair to say Renzetti, when asked, couldn't recall a similar LCA with another employee, right? At Roper Pump, but he had been a manager for 15 years, and he recalled this was his standard practice in sensitive personnel matters. And Simansen couldn't identify one either, could he? Correct, and she'd been there even less than Mr. Renzetti. I think she'd only been there since December of 2013. What about Gin? Gin couldn't identify an LCA that included a release either. Is that not right from the testimony? I believe it is, but she's not in a decision-making capacity where she would have been making that decision. So, let me... I understand. Okay. But I did want to point out a couple other decisions in addition to Tucker v. Florida, because I think their failure to even address these is important. They focus so much on Goldsmith, Gate Gourmet, and Wright v. Southland, which I believe are readily distinguishable based on what we've already argued in our brief. I wanted to focus on the cases that I think are factually analogous. So the next case would be Buchanan v. Delta Airlines, which is a 2018 panel decision. And there, a panel held of the 11th Circuit held that plaintiff could not show causal link between her internal complaint and her termination when her internal complaint occurred after she was already placed on suspension and under investigation, even though she was terminated after a complaint. That is this case. Mr. Knox was placed on suspension pending one day before he made his complaint. And he made his complaint in a preemptive effort, in an effort to try to avoid his potential termination. This case is on all fours with the Buchanan case, which we recognize is a panel decision of the 11th Circuit, but it's an analogous case. As is Butterworth v. Lab Corp. of America Holdings, a post-NASA or 11th Circuit case from 2014, where the court found in that one that the plaintiff could not show but-for causation when termination was contemplated before the protected activity, even though the termination followed the complaint. Same situation as we have here. And then Saffold v. Special Counsel, an 11th Circuit case from 2005, when an employer makes a tentative decision before protected activity occurs, the fact that the employer proceeds with the decision after the protected activity is not evidence of causation. Those cases address the sequence of events here. The decision was made that termination was going to be on the table on day one. On day two, Mr. Knox is suspended pending investigation, as in the Buchanan case. And then on day three, he makes his complaint of discrimination. Those cases, not Goldsmith. When they first gave him his options, did they include the waiver of the Title VII, any Title VII claim? So- It says it did not. Now, is that right or not? When they first gave it to him, he was not given a document that contained anything. He wasn't given a document until later. He also wasn't given a summary- Was he told at that point that there was a waiver of Title VII claims when he was given the options? Now, just yes or no? No. Okay. He was told that the options would be forthcoming in writing. With respect to Goldsmith v. Bagby, and this is getting to whether or not a refusal to sign a release is protected activity, in that case, the court held that the protected activity was the plaintiff's filing of the EEOC charge, not that it was a refusal to sign a release. What happened there is that after he'd filed a release charge, the employer requested that he sign a dispute resolution that would waive all charges, including that particular charge. And when he refused to do that, he was terminated. But the court focused on the filing of the EEOC charge, not the refusal to sign a dispute resolution agreement as the protected activity. Do you want to say a word or two about the race discrimination claim? Sure. Thank you. So, on the race discrimination claim itself, and it was post our briefing in this case, but the issue seems to be focused on now at the Lewis v. City of Union City case. Right. They've got to show the comparator is similar in all material respects. Similar in all material respects. Correct. And they are unable to do that here. So they point to three comparators. They point to Chad Warner and Philip Cruz, two employees who got into an altercation in the workplace, and they were both fired by Roper Pump by Richard Millsap, a different decision maker than Mr. Renzetti. And this all occurred before Mr. Renzetti was involved. They were fired. They did go through anger management, but they were called back to work. They were rehired by Mr. Millsap because they had particular skill sets that the company needed. We believe those facts are completely distinguishable from Mr. Knox's situation. And additionally, they involve a different decision maker. And I take it neither of them were offered an LCA at all. They were not. But again, the decision maker was a different decision maker. Right. With respect to Michael Andrew Ingram, the other individual who's involved, he was not involved in any workplace altercation. Unlike Mr. Knox, he did not beat a co-worker. He got into a domestic dispute with his wife that happened even before the incidents involving Chad Warner and Philip Cruz. And they were also a different decision maker. It was Mr. Millsap. Mr. Renzetti wasn't involved at all. So we believe that all three of those individuals, their situations are completely distinguishable from this case. They're not comparators in all material respects. I think our pretext argument I've pretty much covered applies to both. But Mr. Knox has not, he has not squarely addressed head on and rebutted the reasons that were given for his termination. He's no longer employed, some in substance, because he violated the workplace violence policy. They want to argue that he was entitled to continued employment, but he was subject to termination on the first day when he violated that policy. And Mr. Renzetti considered that termination would be one of those three options. He had no entitlement or no claim of right to a last chance agreement. That was a benefit that the company had offered him that was an unearned benefit, but it was not a benefit that he had coming to him. So thank you very much for your time. Thank you very much. Counsel, you've got three minutes for rebuttal. Let me ask you right at the outset, it struck me just talking about the second claim, the race discrimination claim, that you don't have comparators that are similarly situated in all material respects. They have some things in common and some things that are of a moment that are not. What am I missing? Well, Your Honor, we would contend, and we sent in a letter about the supplemental authority of Lewis, in particular the en banc decision that goes through four different criteria in determining whether someone is a comparator, and that three of the four applied in this case to Mr. Knox's scenario. And then the panel decision that followed, where the panel decided that even if someone does not qualify as a comparator, they can be considered in the convincing mosaic standard, they don't become irrelevant even if they're not a comparator. And so we I take it then it would be fair to say that you agree that Ingram, Warner, and Kruse are not similarly situated in all material respects. I don't want to overstate that, I'm just asking that question directly. No, I do think they're similarly situated in all material respects. Because I think, I did not read the en banc decision to say that you have to meet all four of the criteria. No, but you have to meet all material, and I underscore the modifier material respects. I guess that depends on whether the court considers that the workplace violence occurring in the workplace as opposed to at home makes it immaterial, or whether the court considers the wife being the victim and not an employee in one case makes that situation immaterial. You could see though why an employer would say it's a whole lot more salient if you're talking about two employees of the same company than if you're talking about something that is no tie to the company. That would be a moment to a company, wouldn't it? One could reasonably look at it that way anyway. I can understand that, although the defendants argue they're not employees of the same company. They deny joint employment. I did want to note that the release, it could not make Mr. Knox release the right to file an EEOC charge. That is illegal. It does make him release his ability to file suit in the matter. As to termination always being under contemplation, the cases cited do not apply. We don't rely solely on temporal proximity. Those cases don't involve releases intervening, and finally, they had told him they would not terminate him. Thank you. Thank you very much. Thank you both. I will take the case on.